**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GREEN PARTY OF GEORGIA and CONSTITUTION PARTY OF GEORGIA,<br>      Plaintiffs,<br>v.<br><br>STATE OF GEORGIA and BRIAN KEMP, Georgia Secretary of State,<br><br>      Defendants. | :<br>:<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>: 1:12-CV-01822-RWS<br>:<br>:<br>:<br>:<br>:<br>: |

## **ORDER**

This case is before the Court on Plaintiffs' Motion for Reconsideration [12]. After a review of the record, the Court enters the following Order.

## **Background**

In its July 17, 2012 Order, the Court granted Defendants' Motion to Dismiss [4]. (Order on Defs.' Mot. to Dismiss dated July 17, 2012 ("Order") Dkt. [10].) The Court found that Plaintiffs, in their action seeking a declaration that the petition requirements under O.C.G.A. § 21-2-170 are unconstitutional and an order placing Plaintiffs on the 2012 presidential ballot in Georgia, failed to state a claim upon which relief may be granted. (Id.) In their Complaint,

Plaintiffs assert that each is a political organization or "body" registered under O.C.G.A. § 21-2-110 and § 21-2-113 "desiring to be a qualified party for the purposes of having its candidate put on the 2012 Presidential Ballot in Georgia" and that each "meets all the statutory requirements to place its presidential candidate on the ballot except for the petition requirements of O.C.G.A. § 21-2-170." (Compl., Dkt. [1] ¶ 3.) Section 21-2-170(b) requires that "[a] nomination petition of a candidate seeking an office which is voted upon statewide shall be signed by a number of voters equal to 1 percent of the total number of registered voters eligible to vote in the last election for the filling of the office the candidate is seeking. . . ." In their Complaint, Plaintiffs allege that "[t]hese signature requirements are in excess of those that satisfy constitutional standards and unduly infringe upon the constitutional rights of the Plaintiffs to participate in the electoral process." (Compl., Dkt. [1] ¶ 18.) Defendants moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss, Dkt. [4].)

In its Order granting Defendants' Motion to Dismiss, the Court found that Plaintiffs failed to state a claim upon which relief may be granted, because "the requirement that a petition contain 1 percent of the registered voters would not be unconstitutional." (Order, Dkt. [10] at 4.) Plaintiffs now seek

reconsideration of the Court's judgment in favor of Defendants.  (Pls.' Mot. for Recons., Dkt. [12].)

## Discussion

### I. Legal Standard

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but only when "absolutely necessary."  LR 7.2(E).  Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact."  Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).  A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind."  Id. at 1259.  Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation."  Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001).  Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time."  Pres.

3

Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

## II.   Discussion

*1.   Newly discovered evidence*

Bryan allows for reconsideration where there is "newly discovered evidence." 246 F. Supp. 2d at 1258-59. This basis for reconsideration does not apply here because Plaintiffs do not allege that any new evidence has come to light.

*2.   Intervening development or change in controlling law*

The second avenue for reconsideration under Bryan also does not apply in this case. Plaintiffs have not shown any intervening development or change in controlling law. Instead, Plaintiffs assert that the Court "overlooked" Green Party of Tennessee v. Hargett, 882 F.Supp. 2d 959 (M.D. Tenn. 2012), rev'd, 700 F.3d 816 (6th Cir. 2012). (Pls.' Mot. for Recons., Dkt. [12] at 4.) The Middle District of Tennessee's decision in Green Party of Tennessee is neither "an intervening development or change" nor "controlling law."

As an initial matter, Green Party of Tennessee does not constitute "an intervening development or change" in the law. Plaintiffs first cited Green Party of Tennessee in their Brief in Response to Defendants' Motion to Dismiss

4

("Plaintiffs' Response Brief"). (Dkt. [5] at 9.) Plaintiffs cite the very same decision again in their Motion for Reconsideration. (Dkt. [12] ¶ 5, at 4 of 11; Pls.' Brief in Support of Mot. for Reconsideration, Dkt. [12] at 9-10 of 11.) "[M]otions for reconsideration may not be used to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Bryan, 246 F. Supp. 2d at 1259 (quoting Brogdon ex rel. Cline v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D.Ga. 2000)). Plaintiffs have already presented their argument relying on Green Party of Tennessee. The Court has already considered it and found it to be unavailing.[1]

Additionally, Green Party of Tennessee is not "controlling law." "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 131 S. Ct. 2020, 2036 n. 7 (2011)

---

[1] Plaintiffs filed a "Notice of Supplemental Authority on Plaintiffs' Motion for Reconsideration" to "bring the Court's attention" to the Court of Appeals for the Sixth Circuit's Order on the State of Tennessee's motion for a partial stay pending appeal. (Dkt. [13].) However, the Sixth Circuit order cited by Plaintiffs does not discuss the signature percentage requirement, but instead addresses portions of the district court's judgment requiring the state (1) to place minor political parties' names next to their respective candidates on the ballot, and (2) to conduct a random drawing to determine the position of each political party on the ballot. Green Party of Tennessee v. Hargett, No. 12-5271, 2012 WL 3241679 at *1 (6th Cir. Aug. 9, 2012) (per curiam).

5

(quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134-26 (3d ed. 2011)).  Accordingly, this Court was never bound by the district court's decision in Green Party of Tennessee.  Therefore, the Court finds that this argument does not warrant reconsideration of Plaintiffs' claims.[2]

Second, Plaintiffs advance an argument relying on Bergland v. Harris, 767 F.2d 1551 (11th Cir. 1985).  "Obviously," assert Plaintiffs, "the Court did not even acknowledge, much less address[,] any of the factors mandated by Bergland v. Harris."  (Pls.' Mot. for Recons., Dkt. [12] ¶ 5 at 4 of 11.)  The Court notes, however, that Plaintiffs did not cite to Bergland in any of their prior filings.  "[A] reconsideration motion may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs.,

---

[2] Furthermore, the Court notes that the district court's decision in Green Party of Tennessee relied upon by Plaintiffs was reversed and remanded by the Court of Appeals for the Sixth Circuit.  Green Party of Tennessee v. Hargett, 700 F.3d 816 (6th Cir. 2012). While the underlying Tennessee statute considered by the district court had since been amended, the Court of Appeals instructed the district court upon remand to "take into account that the 2.5% signature requirement, standing alone, is not unconstitutional on its face." Id. at 824 (citing Am. Party of Texas v. White, 415 U.S. 767, 789 (1974); Jenness v. Fortson, 403 U.S. 431 (1971)). Accordingly, even if Green Party of Tennessee v. Hargett were binding upon this Court, this Court's Order is in line with the Sixth Circuit's decision.

6

Inc., 202 F.R.D. 666, 675 (N.D.Ga. 2001) (citing O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir.1992)).  In Bergland, a decision handed down over twenty-five years ago (i.e., not "new" law), the Eleventh Circuit applied a three-part analysis for state statutes restricting ballot access set forth by the Supreme Court in Anderson v. Celebrezze, 460 U.S. 780 (1983). 767 F.2d at 1553. Because Plaintiffs give no reason why they failed to raise an argument based on Bergland prior to this Motion, and because Bergland is not an intervening development in controlling law, this is also not a proper basis for reconsideration.

> 3.  *Error of law or fact*

Plaintiffs primarily rely on the third prong under Bryan, which provides that reconsideration is necessary where there is "a need to correct a clear error of law or fact." 246 F. Supp. 2d at 1259.  Plaintiffs assert that the Court (1) committed clear error, and (2) "ignored and misconstrued . . . binding precedents." (Pls.' Mot. for Recons., Dkt. [12] ¶ 5, at 3 of 11.)  The Court finds, however, that Plaintiffs do not sufficiently allege clear error, and that this request for reconsideration is an effort to reargue issues previously raised and decided by the Court.

7

AO 72A
(Rev.8/82)

First, Plaintiffs do not sufficiently allege clear error in their assertion that the Court "did not address the issue presented by this case." (Pls.' Mot. for Reconsideration, Dkt. [12] ¶ 2). In its previous Order, the Court relied on Supreme Court and Eleventh Circuit precedent in Jenness v. Fortson, 403 U.S. 431 (1971); Cartwright v. Barnes, 304 F.3d 1138 (11th Cir. 2002); and Coffield v. Kemp, 599 F.3d 1276 (11th Cir. 2010) to conclude that Georgia's ballot petition requirements were not unconstitutional. Plaintiffs, however, argue that the Court "relied mainly on three cases that are inapposite" and that instead of addressing the issue of "access to the Presidential ballot," the Court "addressed an issue . . . of access to state and congressional races." (Pls.' Mot. for Reconsideration, Dkt. [12] ¶ 2.)

Because Jenness, Cartwright, and Coffield interpreted the same provision of the Georgia code challenged by Plaintiffs, they are not "inapposite." O.C.G.A. § 21-2-170(b)—and its predecessor, Ga. Code Ann. § 34-1010—applies to candidates seeking any office which is voted upon statewide, including state and federal offices. While Jenness, Cartwright, and Coffield were not suits brought by presidential candidates, the Court finds that these decisions still control in this case and support the Court's holding.

8

In Jenness, the Supreme Court considered a Georgia law that required "a candidate for elective public office who does not enter and win a political party's primary election" to "file a nominating petition signed by at least 5% of the number of registered voters at the last general election for the office in question." 403 U.S. 431, 432 (1971) (citing Ga. Code Ann. § 34-1010 (1970)). While the petitioners in Jenness were seeking gubernatorial and congressional office, not presidential, the Jenness Court considered the Georgia law in light of its prior decision in Williams v. Rhodes, 393 U.S. 23 (1968), which invalidated Ohio election laws "insofar as in combination they made it virtually impossible for a new political party, even though it ha[d] hundreds of thousands of members, or an old party, which ha[d] a very small number of members, to be placed on the state ballot in the 1968 presidential election." Jenness, 403 U.S. at 434-35. The Jenness Court distinguished Georgia's statutory scheme from Ohio's, holding that the Georgia provision was constitutional. Id. at 438. Additionally, the Court noted that:

> The open quality of the Georgia system is far from merely theoretical. For the stipulation of facts in this record informs us that a candidate for Governor in 1966 and a candidate for President in 1968 gained ballot designation by nominating petitions, and each went on to win a plurality of the votes cast at the general election.

9

Id. at 439.  In other words, the Jenness Court did not distinguish between gubernatorial, congressional and presidential candidates in its analysis and ultimate approval of the Georgia law.

In Cartwright, the Eleventh Circuit considered a challenge to O.C.G.A. §21-2-170(b) brought by members of the Libertarian party who wished to run for congressional office.  304 F.3d 1138, 1139 (11th Cir. 2002).  The court concluded that the 5% signature requirement required for non-statewide office did not violate the Qualifications Clause nor "any other constitutional provision."  Id.  While Cartwright did not involve a presidential candidate, neither did it indicate that the provision would be unconstitutional in the presidential context.  In fact, the Cartwright court relied on the Supreme Court's reasoning in Jenness:

> The fact is, of course, that from the point of view of one who aspires to elective public office in Georgia, alternative routes are available to getting his name printed on the ballot. He may enter the primary of a political party, or he may circulate nominating petitions either as an independent candidate or under the sponsorship of a political organization. We cannot see how Georgia has violated the Equal Protection Clause of the Fourteenth Amendment by making available these two alternative paths, neither of which can be assumed to be inherently more burdensome than the other."

Id. at 1141-42 (quoting Jenness, 403 U.S. at 440-41).  Again, there was no distinction made between "elective public offices" in the court's analysis.

10

Recently, in Coffield, the Eleventh Circuit once more denied a challenge to O.C.G.A. §21-2-170(b) brought by a prospective congressional candidate. The Coffield court held that the district court did not err in dismissing the plaintiff's complaint and that "the pertinent laws of Georgia have not changed materially since the decisions in Jenness and Cartwright were made." Id. at 1277.

In short, Jenness, Cartwright and Coffield are good law, are binding on this Court, and are directly applicable to Plaintiffs' claims.  The Court finds that Plaintiffs' attempt to distinguish these cases on the grounds that they were brought by non-presidential candidates is unpersuasive.  The legal analysis in these cases – the relevant part here – did not vary based on the office sought by the challengers.  Consequently, Plaintiffs' assertion that these cases are "inapposite" is inaccurate and does not provide a sufficient basis for reconsideration.[3]

---

[3] Further, Defendants relied on Jenness, Cartwright, and Coffield in their Memorandum of Law in support of Defendants' Motion to Dismiss. (Dkt. [4-1] at 6-7).  Plaintiffs had the opportunity to respond to these arguments but chose not to in their Response to Defendants' Motion to Dismiss. (See Dkt. [5]). "Motions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued." Lockard v. Equifax, Inc., 163 F.3d 1259, 1267 (11th Cir. 1998) (citing O'Neal, 958 F.2d at 1047).  Plaintiffs have not provided a reason why they failed to respond to Defendants' arguments before this Court issued its Order.

11

Next, Plaintiffs allege that the Court erred in not "acknowledging" or "addressing" the "controlling precedent" provided by American Party of Texas v. White, 415 U.S. 767 (1974); Anderson, 460 U.S. 780; and Bergland, 767 F.2d 1551. Plaintiffs' failure to raise Bergland in their earlier pleadings is discussed supra Part II.2. Plaintiffs did, however, raise arguments based on American Party of Texas and Anderson in their prior submissions to the Court. (See Pls.' Resp. to Defs.' Mot. To Dismiss, Dkt. [5] at 2, 5-7, 9 of 11.) The Court found Plaintiffs' arguments unavailing then and finds no grounds for reversing its interpretation now.

Plaintiffs' cited authorities provide no support for a finding that Georgia's signature requirement is unconstitutional. In American Party of Texas, the Supreme Court recognized that "any fixed percentage requirement is necessarily arbitrary," but held that requiring signatures of 1% of the vote for governor at the last general election "falls within the outer boundaries of support the State may require before according political parties ballot position." 415 U.S. at 783. The Court stated that a state may "insist that political parties appearing on the general ballot demonstrate a significant, measurable quantum of community support." Id. at 782. Furthermore, the Court reaffirmed its finding in Jenness that "there is surely an important state interest . . . in

12

avoiding confusion, deception, and even frustration of the democratic process at the general election." Id. at n. 14 (quoting Jenness, 403 U.S. at 442). Accordingly, American Party of Texas directly supports this Court's finding that Georgia's requirement that a petition contain one percent of registered voters' signatures would not be unconstitutional.

Plaintiffs' reliance on Anderson is also misplaced. In Anderson, the Supreme Court held unconstitutional an Ohio statute that required independent candidates for president to declare their candidacy in March "without mandating comparable action by the nominee of a political party." 460 U.S. at 783, 806. The Court held that the "extent and nature" of the burdens imposed on the "voters' freedom of choice and freedom of association" outweighed Ohio's "minimal interest in imposing a March deadline."[4] Id. at 806. The Court acknowledged, however, that "not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens," and that "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." Id. at 788 (quoting Storer v. Brown, 415

---

[4] The Court notes that the comparable Georgia statutory provision, O.C.G.A. §21-2-132(i)(2)(A), allows a political body or independent candidate to file notice of candidacy as late as July.

13

U.S. 724, 730 (1974)).  The Anderson Court further stated that "the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions," such as the requirement that candidates "make a preliminary showing of substantial support in order to qualify for a place on the ballot."  Id. at 788, 788 n. 9 (citing American Party of Texas, 415 U.S. 767); Jenness, 403 U.S. 431).  Therefore, Anderson, like American Party of Texas, supports this Court's decision.

In sum, Plaintiffs have pointed to no clear error of law meriting reconsideration of the Court's initial judgment.

## Conclusion

Other than mere disagreement with the ultimate result, Plaintiffs offer no basis for reconsidering the Court's previous ruling in this case.  Based on the foregoing, Plaintiffs' Motion for Reconsideration [12] is **DENIED**.

**SO ORDERED**, this 19th day of March, 2013.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE